IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL HOLMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:18-cv-450-JTA |
| | ) | |
| ANDREW SAUL, | ) | (WO) |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Pursuant to 42 U.S.C. § 405(g), the claimant, Michael Holmes, brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1]  The Commissioner denied Holmes' claim for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (*Id*.)  The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Docs. No. 9, 10.)

Based upon review of the record and the briefs submitted by the parties, the Court finds that the decision of the Commissioner is due to be AFFIRMED.

---

[1] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

## I.  PROCEDURAL HISTORY AND FACTS

Michael Holmes ("Holmes") was born on February 6, 1966 and was 51 years old at the time of the administrative hearing held on July 25, 2017.  (R. 273.)[2]  He completed high school and previously worked as a sales associate in a paint store.  (R. 278.)  Holmes alleges a disability onset date of August 19, 2014, due to depression, anxiety, a heart condition, and pain in his back, legs, and shoulders.  (R. 273, 277.)

Holmes applied for a period of disability, DIB and SSI on November 20, 2014 and August 22, 2014, respectively, under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq*.  (R. 245-47, 252-55.)  Both applications were denied on March 11, 2015 (R. 81-82, 100), and Holmes requested an administrative hearing (R. 117-18).

Following an administrative hearing, the Administrative Law Judge ("ALJ") denied Holmes' request for benefits in a decision dated October 18, 2017.  (R. 24-40.)  On April 7, 2018, the Appeals Council denied Holmes' request for review.  (R. 1-4.)  Therefore, the hearing decision became the final decision of the Commissioner.  On May 1, 2018, Holmes filed the instant action appealing the decision of the Commissioner.  (Doc. No. 1.)

## II.  STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive" when "supported by substantial

---

[2] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (Doc. No. 29.)

evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id*. at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210. However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

### III.   STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB and SSI must prove that he is disabled. *See* 20 C.F.R. § 404.1505; 20 C.F.R. § 416.920. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The evaluation is made at the hearing conducted by

the ALJ. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id*. Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that he is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1). In this final analytical step, the ALJ must

decide whether the claimant is able to perform any other relevant work corresponding with his RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV. ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found that Holmes has not engaged in substantial gainful activity since the alleged onset date of disability, August 19, 2014, and he suffers from the following severe impairments that significantly limit his ability to perform basic work activities: degenerative disc disease of the lumbar spine, degenerative disc disease of the left shoulder, obesity, diabetes mellitus, depression, and anxiety. (R. 26.) The ALJ concluded however that Holmes' severe impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 27.)

After consideration of the entire record, the ALJ determined that Holmes retains the RFC to perform light work[3] as defined in 20 C.F.R. § 404.1657(b), but not a "full range" of such work. (R. 29-30.) The ALJ found the following workplace limitations applicable to Holmes:

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities . . . ." 20 C.F.R. § 404.1657(b).

5

    can occasionally climb ramps or stairs; can occasionally climb ladders, ropes or scaffolds; occasionally balance, stoop, crouch, kneel or crawl; frequent reaching and overhead reaching with both arms; occasional exposure to moving mechanical parts; occasional operating of a motor vehicle; occasional exposure to unprotected heights; and is limited to routine and repetitive tasks.

(R. 30.)

Following the testimony of the Vocational Expert ("VE"), the ALJ determined that Holmes was precluded from performing any of his past relevant work. (R. 38-39.) The ALJ also concluded that Holmes was not disabled as defined by the Act because his age, education, work experience, and RFC would allow him to make a "successful adjustment to other work that exists in significant numbers in the national economy." (R. 40.) The ALJ further concluded that Holmes had not been under a disability from August 19, 2014, through October 18, 2017, the date of the ALJ's decision. (R. 40.)

## V.    DISCUSSION

Holmes presents two arguments on appeal. First, he argues the ALJ failed to provide adequate rationale addressing the medical opinions of record expressed by Dr. Scott Stewart, who performed a consultative psychological examination. (Doc. No. 30 at 3-4.) Second, Holmes argues that his case should be remanded for the ALJ to evaluate a subsequent favorable decision issued by another ALJ which Holmes believes constitutes new and material evidence. (*Id*. at 11-12.)

The Court evaluates each of Holmes' arguments below.

> A. The ALJ provided adequate reasoning for giving partial weight to the opinion of Dr. Scott Stewart.

Holmes challenges the ALJ's review of the medical evidence by arguing that she failed to provide adequate rationale for according partial weight to the findings of consultative psychologist Dr. Scott Stewart. (Doc. No. 30 at 3.) The Commissioner responds that substantial evidence supports the ALJ's determination as to Holmes' RFC. (Doc. No. 31 at 6.)

Dr. Stewart performed a consultative examination of Holmes in January 2015. (R. 386-89.) Holmes told him that he was depressed since the death of his wife in August 2014, which made him the sole caretaker for his three young children. (R. 386.) Dr. Stewart found Holmes was oriented to person, place, time and situation. Attention and concentration skills were in the borderline range and not commensurate with overall cognitive functioning. (*Id*. at 387.) Memory functioning was within functional limits and commensurate with general cognitive functioning, though working memory appeared to be in the defective range. (*Id*.) Holmes denied hallucinatory experiences, delusions, and did not report phobias, obsessions or compulsions. (*Id*. at 388.) Holmes' mood was depressed and anxious due to depression since the death of his wife. (*Id*.) He reported being in treatment, was fully able to manage his own daily living needs and reported caring for his children without assistance. (*Id*.) Dr. Stewart wrote, that as of the examination date, Holmes

> appears to have the interpersonal skills required to relate to others in a work setting. He seems able to sustain the attention needed to do repetitive tasks, but lacks the ability to handle the day-to-day pressures of a work environment. . . . He is presenting with symptoms associated with an

7

> Adjustment Disorder with Mixed Anxiety and Depressed Mood.  Prognosis is fair for a favorable response to treatment within the next 6 to 12 months.  He is motivated for treatment and was fully cooperative with the examination process.

(R. 388.)   Dr. Stewart's report assigned Holmes a global assessment of functioning ("GAF") score of 55.  (R. 388.)

The ALJ's review of Dr. Stewart's[4] findings noted that the GAF score of 55 indicated "[m]oderate symptoms [or] any moderate difficulty in social, occupational, or school functioning" according to the Diagnostic and Statistical Manual of Mental Disorders, 4th Ed.  (R. 32 at n.1, explaining that the GAF score range for moderate symptoms/difficulty in functioning is 51-60.)  The ALJ also noted Dr. Stewart opined that Holmes had a fair prognosis for a favorable response to treatment in the next six to twelve-months.  (R. 36.)  The ALJ concurred with Dr. Stewart's assessment that Holmes had the interpersonal skills required to relate to others, and that he could perform repetitive tasks.  She noted that Dr. Stewart's "assessment was performed less than 12 months following the claimant's loss of his wife, when he remained symptomatic of his bereavement."  (R. 36.)

The ALJ discussed the record evidence that led her to find Holmes' mental difficulties improved over time, as expected by Dr. Stewart.  Holmes met with a counselor at the Pastoral Institute, Earl Nichols, who wrote that during the first six months of 2015, Holmes had "progressed significantly."  (R. 32, 408.)  Nichols reported in June 2015, that Holmes and his children were experiencing difficulty on his deceased wife's birthday, but that he was improving overall.  (R. 33, 412.)   Holmes also managed his major

---

[4] The ALJ mistakenly referred to Dr. Stewart as "Dr. Steward" throughout her decision.

8

depressive/anxiety disorder with Citalopram and Buspirone prescribed by Dr. Dennis Harden. (R. 33, 546.) Dr. Harden described Holmes' anxiety as "situational." (R. 33, 542, 545.) In February 2017, Dr. Harden referred Holmes to Dr. Kaizad Schroff. (R. 591.) Holmes complained of heightened depression and anxiety related to assisting in the prosecution of his late wife's physician. (R. 33, 591.) Dr. Schroff's assessment of Holmes found his GAF score was 51 with "depressed mood, but full range of affect, with an intact thought process." (R. 33, 592.)

In March 2017, Holmes sought psychiatric services at East Alabama Mental Health ("EAMH") due to heightened anxiety levels he attributed to financial burdens and assisting in the prosecution of his late wife's doctor. (R. 33, 556.) EAMH records show a diagnosis of major depressive/unspecified anxiety disorder. (R. 33, 552.) Notes from another visit to EAMH indicated progress when Holmes was allowed to vent about his problems and he displayed an interest in mastering coping skills. (R. 33-34, 550.) Notes from April and May 2017 show that Holmes was doing well on current medications and had progressed in "freely discuss[ing] his emotions." (R. 34, 548, 595, 597.)

Holmes asserts the ALJ erred by conflating Dr. Stewart's finding that he had a "fair" prognosis for improvement over the next six to 12 months with a certainty that he "would" improve over that time frame, and by finding him able to work despite Dr. Stewart's opinion that he "lacks the ability to handle the day-to-day pressures of a work environment." (Doc. No. 30 at 7.) He further suggests that the ALJ's decision is similar to *Milner v. Berryhill*, No. 3:17-CV-257-GMB, 2018 WL 3613994 (M.D. Ala. July 27,

9

2018), where this court found a distinction between "summarizing evidence and analyzing it." (Doc. No. 30 at 7.)

Contrary to Holmes' assertion, the Court finds no error. The ALJ's decision gave clear reasons for giving Dr. Stewart's opinion partial weight. An ALJ is permitted to assign weight to a medical opinion based on how "consistent [the] medical opinion is with the record as a whole." 20 C.F.R. § 404.1527(c)(4). Here, the ALJ emphasized that Dr. Stewart's examination of Holmes occurred within six months of his bereavement when his depressive symptoms were strong. (R. 37.) In explaining why she did not find the severity of the mental impairment alleged by Holmes supported by the record, the ALJ cited Dr. Harden's opinion that the depression and anxiety which led to Holmes' substantial concentration deficits were largely situational in nature and improving with treatment. (R. 37.)

Dr. Stewart's "fair" prognosis for Holmes' improvement over time is borne out by the medical record. Reports from the Pastoral Institute and EAMH indicated that Holmes had made significant improvement after "receiving conservative treatment in the form of psychiatric medications and counseling." (R. 37.) The ALJ contrasted Holmes' testimony that he would mentally shut down, or "zone out" for "anywhere from five to 25 minutes," with the absence of any reference to this occurrence in treatment notes from any source. (R. 37, 52.) Another inconsistency noted by the ALJ was Holmes' testimony that his medications did not give full relief despite multiple treatment notes relaying his statements that he was doing well on his current medications. (R. 37, 52, 595, 597.)

An ALJ must consider medical opinions together with relevant evidence in the record. 20 C.F.R. § 404.1527(b). Additionally, an "ALJ must state with particularity the weight given to different medical opinions and the reasons therefore." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Here, the ALJ compared the evaluations of Holmes' depression made within six months of his loss with later reports noting improvement. Her decision highlighted inconsistencies between the record and Holmes' testimony, and recognized the connection between Holmes' participation in the prosecution of his wife's doctor and exacerbation of his depressive symptoms. Additionally, the regulations also allow an ALJ to place greater weight on treating sources who had more frequent opportunities to observe and counsel Holmes, as opposed to the weight given to the single consultative examination by Dr. Stewart. *See* 20 C.F.R. § 404.1527(c)(2)(i).

Upon review of the record, the Court concludes that substantial evidence exists to support the ALJ's decision to assign partial weight to Dr. Stewart's examining opinion. The decision points to record evidence from treating sources which report Holmes' improvement in coping with the depression caused by his wife's death and his new role as a single parent. Because the record supports the ALJ's reasons for the weight assigned to this consulting opinion, the ALJ's decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178.

B. A subsequent ALJ decision finding Holmes disabled does not constitute new and material evidence supporting a remand.

The ALJ found that Holmes was not disabled between his alleged onset date of August 19, 2014, and the decision date of October 18, 2017. (R. 40.) Holmes asserts the Commissioner's decision in this case should be remanded for reconsideration based upon his subsequent application for DIB and SSI wherein an ALJ issued a fully favorable decision finding that he was disabled.[5] (Doc. No. 30 at 9, 11-12; Doc. No. 30-1.) Holmes contends that this subsequent decision invalidates the ALJ's evaluation of his testimonial evidence in this case. (Doc. No. 30 at 9.) The Commissioner responds that the subsequent ALJ decision is not evidence and that his decision in this case is due to be affirmed because it is supported by substantial evidence. (Doc. No. 31 at 8.)

The sixth sentence of Section 405(g) of the Social Act "provides a federal court the power to remand the application for benefits to the Commissioner for the taking of additional evidence upon a showing 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.' " *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1261. A remand under this provision of section 405(g) is permitted when a claimant establishes "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable probability that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." *Hunter v.*

---

[5] The subsequent ALJ decision, issued on June 21, 2019, found that Holmes was disabled due to post-traumatic stress disorder, depression, anxiety, degenerative disc disorder, low back pain, diabetes mellitus, and hypertension. (Doc. No. 30-1 at 1.)

*Soc. Sec. Admin. Comm'r*, 808 F.3d 818, 821 (11th Cir. 2015) (quoting *Caulder v. Bowen*, 791 F.3d 872, 877 (11th Cir. 1986).)

Holmes' argument is foreclosed by the Eleventh Circuit's holding in *Hunter*. The Eleventh Circuit held in *Hunter* that a later favorable ALJ decision constitutes no new and material evidence warranting a sentence-six remand where the first unfavorable ALJ decision found the claimant was not disabled. *Hunter*, 808 F.3d at 822; *see also Reeves v. Comm'r, Soc. Sec. Admin.*, 817 F. App'x 898, 901 (11th Cir. 2020); *Arnold v. Soc. Sec. Admin. Comm'r*, 724 F. App'x 772, 783 (11th Cir. 2018). The Eleventh Circuit explained that "the mere existence of a later favorable decision by one ALJ does not undermine the validity of another ALJ's earlier unfavorable decision or the factfindings upon which it was premised." *Hunter*, 808 F.3d at 822 (citing *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009)). Accordingly, as Holmes has failed to establish that new and material evidence exists which warrants a sentence-six remand, his request for remand must fail.

## VI.   CONCLUSION

After review of the administrative record, and considering all of Holmes' arguments, the Court finds the Commissioner's decision to deny Holmes disability is supported by substantial evidence and in accordance with the applicable law. Accordingly, it is hereby

ORDERED that the decision of the Commissioner is AFFIRMED.

A separate judgment will be issued.

DONE this 13th day of May, 2021.

/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE